## Case No. 10,785.

### PARTRIDGE v. DEARBORN et al.

[2 Lowell, 286; [1] 9 N. B. R. 474.]

District Court, D. Massachusetts. Dec.. 1873.

BANKRUPTCY—PREFERENCE—JUDGMENT FOR DEBT NOT DUE.

1. It seems to be decided in Wilson v. City Bank, 17 Wall. [84 U. S.] 473. that a fraudulent preference cannot be committed by the mere neglect of an insolvent debtor to go into bankruptcy.

---

[2] [From 2 O. G. 619.]

[1] [Reported by Hon. John Lowell. LL. D., District Judge, and here reprinted by permission.]

2. Distinction between Wilson v. City Bank, 17 Wall. [84 U. S.] 473, and Buchanan v. Smith, 16 Wall. [83 U. S.] 277, considered.

3. Where a creditor obtained judgment for a debt not yet payable, and thereby obtained a lien by levy on the goods of the debtor, *held*, the lien was invalid against the assignee in bankruptcy of the debtor, though the circumstances did not prove a statute preference.

Bill in equity by [H. Partridge] the assignee of Isaac Seabury against three judgment creditors [J. B. Dearborn and two others] who levied their several executions on the goods of Seabury a few days before he filed his petition in bankruptcy, and caused them to be sold soon afterwards. The proceeds of sale were in the hands of the officer, who was made a party defendant. The bill charged that the judgments were obtained and realized by way of fraudulent preference. There was evidence that Seabury was a trader, and was insolvent, and known to the defendants to be so before they obtained their judgments. The bankrupt testified that he failed, through inadvertence, to enter his appearance in the suits, and had no intention that the defendants should obtain a preference.

C. S. Lincoln, for plaintiff.

Boardman & Blodgett (C. J. Noyes, with them), for defendants.

LOWELL, District Judge. No objection has been taken to the bill for multifariousness; and I understand that the convenience of all parties has been promoted by trying the several cases as one.

The late case of Wilson v. City Bank, 17 Wall. [84 U. S.] 473, disposes of the most important part of the present controversy. It decides that no inference of an intent to prefer a creditor can be derived from the facts that the debtor is insolvent, and knows that the creditor is about to procure a judgment against him by virtue of which an actual preference can be obtained. The reason is that it is no part of the legal or moral duty of an insolvent person to file a petition in bankruptcy, nor to defend against a just debt sued for by one creditor in order to give time to other creditors to file such a petition. The next step in the reasoning is inevitable: that the state of mind in which a man omits to do what he is neither legally nor morally bound to do, is immaterial.

That case does, in a certain sense, overrule Buchanan v. Smith, 16 Wall. [83 U. S.] 277, by rejecting the arguments on which the decision in that case was rested; but the decisions can be reconciled in this way: In Buchanan v. Smith, the insolvent debtor was sued by Buchanan, and before judgment had been obtained, made an assignment to a third person for the benefit of creditors; this assignment was, of course, invalid as against the assignee in bankruptcy; but, when set aside in the court of bankruptcy, the property would go to the benefit of the general creditors, and not for the advantage of an intervening judgment creditor. It would be neither the duty nor the right of an assignee in bankruptcy to inquire into a fraud on a single creditor, unless the consequence would be to bring the assets, or some part of them, into the general fund. If I have not misread Buchanan v. Smith [supra], it may stand upon these supports; but the theory on which it was decided, that a debtor can by mere neglect, from whatever motive, commit a fraudulent preference, seems to me to be wholly inconsistent with the reasoning and the conclusion in Wilson v. City Bank [supra], and, if the earlier case cannot be thus explained, it is overruled.

That a creditor may obtain an actual preference by pursuing his legal remedies, is one of the difficulties in the operation of all bankrupt laws, as was pointed out by Curtis, J., delivering the judgment of the supreme court in Buckingham v. McLean, 13 How. [54 U. S.] 169; and it was there suggested that the statute might guard against such inequalities, as has been done by some of the English acts. The latest revision of the statute in that country (32 & 33 Vict. c. 71, § 87) provides that, where the goods of a trader have been taken in execution and sold, the officer shall retain the proceeds for fourteen days; and if within that period notice of a petition in bankruptcy is served on him, he shall hold such proceeds, after deducting expenses, in trust for the assignee. Our courts, in endeavoring to work out an equitable rule from the existing law, adopted a construction which the supreme court have now pronounced to be unsound, as they did upon an analogous point under the act of 1841 [5 Stat. 440], in Buckingham v. McLean, ubi supra.

Although I am of opinion that the motive of the debtor in such a case is immaterial, yet as that precise question is left open in the late decision, I have carefully examined the evidence in this case, and am satisfied that Seabury, the bankrupt, is not proved to have wished that any preference should be obtained by the defendants.

There remains, however, in respect to the defendants, Scott & Co., a point both new and important. They obtained judgment for a debt, part of which had not matured when they brought their action. This fact was very properly urged as evidence of actual collusion on the bankrupt's part; and such collusion, if proved, would, beyond doubt, be "suffering" his property to be taken on legal process. But, upon all the evidence, I do not find the collusion. In my opinion, however, the assignee has a remedy for this wrong, though it is not a statute preference. The assignment conveys to the assignee all the debtor's property, subject to lawful incumbrances. The lien created in favor of Scott & Co., by the judgment and seizure, is an incumbrance to be preserved, so far as it is lawful, and no farther; and a court of equity can inquire into its lawfulness.

An assignee, in so far as he represents creditors, is not absolutely bound by judgments against the debtor. In England, he is held not to be bound at all. Ex parte Chatteris, 26 Law T. (N. S.) 174; In re Fowler [Case No. 4,998], and cases cited. In Fowler's Case I refused to adopt the rule, that the bankrupt court could reopen all judgments; but expressed the opinion, to which I adhere, that creditors, and the assignee representing them, may collaterally impeach judgments against the bankrupt for fraud or error. This is always the right of third persons who have had no day in court. In the state court, no doubt, the assignee is a privy with the debtor; but he could not there avail himself of any fraud which merely tends to give the judgment creditor an advantage over others, for that is the very purpose of a judgment at law.

If, then, Scott & Co. have committed a technical fraud on the other creditors in obtaining their judgment, it may be inquired into here. And it seems to me to be such a fraud on their part, that they sued for a debt as being payable which was not payable. In the state court they filed a bill of particulars, resembling in all respects their accounts rendered the bankrupt, excepting in the very important circumstance that it omitted the words "cash in three months" and "cash in four months," which appear on the face of two of their accounts respectively. This suppressio veri must be presumed to have been wilful, since without it they could not have procured the judgment and consequent lien which they now rely on. The adaptation of means to the end proves the design. Such a contrivance to obtain an advantage through the forms of law cannot be upheld by a court of equity, although it may not happen to be described in the statute as a fraudulent preference, or to have ever been undertaken before by any creditor; and though it may be a fraud that could hardly be committed if there were no bankrupt law, I do not set it aside as a fraudulent preference under the statute, but as a lien fraudulently obtained by the creditor without any assistance from the bankrupt. Decree accordingly.